**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.:** |
| | : | |
| **v.** | : | |
| | : | **VIOLATION:** |
| **STACY STAPLES,** | : | |
| | : | **18 U.S.C. § 371 (Conspiracy to Commit** |
| **Defendant.** | : | **Embezzlement and Theft of Labor Union** |
| | : | **Assets)** |

**I N F O R M A T I O N**

The United States Attorney charges that:

**GENERAL ALLEGATIONS**

At all times material to this Information:

**Background**

1.      The American Federation of Government Employees ("AFGE") was a labor organization headquartered in Washington, D.C. which represents workers in various functions of the private sector and the government affecting commerce throughout the United States and overseas.   As such, AFGE was a "labor organization" within the meaning of the Labor Management Reporting and Disclosure Act ("LMRDA") of 1959, 29 U.S.C. § 402.   AFGE's headquarters were located at 80 F Street NW, Washington, D.C. 20001.

2.      As a labor organization subject to the provisions of the LMRDA, the officers, agents, and other representatives of AFGE occupied positions of trust and were required to hold its money and property solely for the benefit of AFGE and its members, and to manage and expend such money and property in accordance with AFGE's constitution and by-laws.   AFGE was required to be governed in accordance with its constitution and by-laws.

3.      Co-conspirator Donnell Owens ("OWENS") was hired by AFGE in or around October 2014 as a Secretary to the Director of Communications.   He remained employed as an officer, agent, representative, and employee of AFGE until in or around June 2018.   As a Secretary to the Director of Communications, OWENS's duties and responsibilities included, among other things, preparing expense vouchers and check requests for purported communications department expenses, then submitting them to AFGE for processing and payment.

4.      Defendant Stacy Staples ("STAPLES") was a known associate of co-conspirator OWENS.   Beginning in or around November 2017, STAPLES represented herself to be a legitimate vendor that provided actual services for AFGE, though in fact and as she well knew, STAPLES was not an approved AFGE vendor and did not provide any actual services for AFGE. Based on false and fraudulent check requests that OWENS submitted to AFGE for photography services purportedly provided by STAPLES as an alleged vendor, AFGE paid STAPLES approximately $44,748.

### COUNT ONE
**(Conspiracy to Commit Embezzlement and Theft of Labor Union Assets)**
**(18 U.S.C. § 371)**

1.      Paragraphs 1 through 4 of the General Allegations are realleged and incorporated herein.

### The Conspiracy

2.      From on or about at least November 2017, and continuing through on or about at least June 2018, in the District of Columbia and elsewhere, defendant STACY STAPLES, OWENS, and others, did knowingly and unlawfully combine, conspire, confederate, and agree

2

together and with each other to embezzle, steal, and unlawfully and willfully abstract and convert

to their own use and the use of others the moneys, funds, property, and other assets of AFGE, a

labor organization engaged in an industry affecting interstate commerce, while OWENS was

employed as a Secretary to the Director of Communications for AFGE, in violation of Title 29,

United States Code, Section 501(c).

## Objects of the Conspiracy

3.      It was an object of the conspiracy for the conspirators to enrich themselves and

others by embezzling, stealing, and unlawfully and willfully abstracting and converting to their

own use and the use of another, moneys, funds, property, and other assets of AFGE to which the

conspirators were not entitled.

## Manner and Means of the Conspiracy

The conspiracy was carried out through the following manner and means, among others:

4.      STAPLES held herself out to AFGE as a purported vendor that provided legitimate

photography services to the labor organization.

5.      Co-conspirator OWENS then submitted approximately ten false and fraudulent

check requests and invoices to AFGE for payments related to services purportedly provided by

STAPLES as an alleged AFGE vendor, though as STAPLES and OWENS knew, the check

requests listed fictitious dollar amounts for fake work assignments supposedly performed for

AFGE by STAPLES.

6.      Accordingly, no such services were provided or, to the extent that they were

provided, the services were performed by legitimate AFGE employees or vendors who were not

involved in the scheme, rather than by STAPLES.

7.       Based on the false and fraudulent invoices and check requests that were submitted, AFGE authorized payments to STAPLES totaling approximately $44,748, via checks issued to STAPLES from AFGE's Wells Fargo Bank account.

8.       Upon receipt of the unlawfully obtained AFGE moneys, and as part of the unlawful scheme, STAPLES retained one portion of the fraudulent funds, and gave the other portion to OWENS.

9.       During the scheme, the conspirators also took affirmative steps to conceal the scheme by, among other things, submitting false and fraudulent documents, and providing false information to AFGE designed to cover up the fraud, lead AFGE to believe that STAPLES was a legitimate vendor to whom AFGE disbursed funds to in exchange for real work, and enable payment.

### Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, in the District of Columbia and elsewhere the following overt acts:

10.       On or about November 10, 2017, OWENS submitted a false and fraudulent check request for $3,360 to AFGE for photography services purportedly provided by STAPLES.

11.       On or about November 10, 2017, STAPLES sent an email to OWENS's AFGE email account with a signed copy of a W-9 with her name and Social Security number, which was required by AFGE from a new vendor.

12.       On or about November 20, 2017, STAPLES sent an email to OWENS's AFGE email account with the subject line "Payment Follow-Up," asking when she would see "payment

for the invoice" submitted to AFGE, via OWENS, in connection with the purported services she provided to AFGE.

13.     On or about December 7, 2017, STAPLES cashed a check from AFGE's Wells Fargo Bank account for $3,890 at a Wells Fargo Bank branch in Annapolis, Maryland at approximately 10:45 a.m.

14.     Less than ten minutes later that same day, a $1,100 cash deposit was made into OWENS's SunTrust Bank account at a branch less than a mile away from the Wells Fargo branch in Annapolis, Maryland.

15.     On or about February 14, 2018, OWENS submitted a false and fraudulent check request for $6,400 to AFGE for photography services purportedly provided by STAPLES.

16.     On or about April 26, 2018, STAPLES cashed a check from AFGE's Wells Fargo Bank account for $3,830 at a Wells Fargo Bank branch in Annapolis, Maryland at approximately 2:33 p.m.

17.     Less than an hour later that same day, a $1,700 cash deposit was made into OWENS's SunTrust Bank account at a branch in Annapolis, Maryland.

18.     On or about April 26, 2018, STAPLES also made a $1,000 cash deposit into her Bank of America account at a Bank of America branch in Annapolis, Maryland.

19.     On or about May 14, 2018, OWENS submitted a false and fraudulent check request for $3,608 to AFGE for photography services purportedly provided by STAPLES.

20.     On or about May 29, 2018, STAPLES sent an email to OWENS's AFGE email account with a copy of a blank, voided check for her Bank of America account ending in 7703 with the message, "Please find the attached voided check as requested," which OWENS then

forwarded to an AFGE staff accountant, adding "Ms. Staples would like to set up to have payments EFT," to which the staff accountant replied, "Done."

21.     On or about June 5, 2018, OWENS submitted a false and fraudulent check request for $5,490 to AFGE for photography services purportedly provided by STAPLES.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1.     Upon conviction of the offense alleged in this Information, STACY STAPLES shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendant equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

2.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of STACY STAPLES

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property that cannot be divided without difficulty;

STACY STAPLES shall forfeit to the United States any other property of STAPLES' up to the value of the property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by Title 28,

United States Code, Section 2461(c).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c))**

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By: _____

ANNE P. MCNAMARA
Assistant United States Attorney
D.C. Bar No. 1006550
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
Phone: (202) 809-3502
Email: Anne.McNamara2@usdoj.gov

7